CLERK'S OFFICE
A TRUE COPY
Dec 24, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin



AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

❐ Original          ❐ Duplicate

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>information about all communications made using cell<br>towers and all network interactions made by the<br>devices at the dates, times, and locations listed below | )<br>)<br>)<br>)<br>)<br>) |

Case No.     25-MJ-243

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before     1/07/2026     *(not to exceed 14 days)*
❐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     William E. Duffin, U.S. Magistrate Judge     .
*(United States Magistrate Judge)*

❐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❐ for _____ days *(not to exceed 30)*     ❐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     12/24/2025   8:10 AM     _____
*Judge's signature*

City and state:     Milwaukee, Wisconsin     William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

Case 2:25-mj-00243-WED     Filed 12/24/25     Page 1 of 37     Document 1

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

Records and information associated with the below listed search parameters for the

identified date(s) and timeframe(s) that are within the possession, custody, or control of the

cellular service provider(s) identified below:

a. For **Verizon,** records and information associated with communications to and from the towers that provided cellular service to the areas referenced below, and for **T-Mobile and AT&T**, records and information associated with communications to and from the towers located within [1.5] miles of the areas referenced below, during the specified date/time range referenced in **Central Time**.

- (Location 1) **43.04591, -87.95126** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 2) **43.04651, -87.9489** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 3) **43.04735, -87.94791** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 4) **43.04865, -87.94524** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 5) **43.01677, -87.98496** between **December 23, 2025 at 11:15 AM** and **December 23, 2025 at 11:21 AM**
- (Location 6) **43.017, -87.94087** between **December 23, 2025 at 12:29 PM** and **December 23, 2025 at 12:36 PM**
- (Location 7) **43.02301, -87.93305** between **December 23, 2025 at 2:26 PM** and **December 23, 2025 at 2:35 PM**
- (Location 8) **43.01538, -87.93768** between **December 23, 2025 at 5:00 PM** and **December 23, 2025 at 6:00 PM**

b. For **T-Mobile** and **US Cellular,** <u>all timing advance records within the locations, bounded by radius, dates, and times (in Central Time) below:</u>

- (Location 1) Within **0.35 Miles** of 43**.04591, -87.95126** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 2) Within **0.35 Miles** of **43.04651, -87.9489** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 3) Within **0.35 Miles** of **43.04735, -87.94791** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 4) Within **0.35 Miles** of **43.04865, -87.94524** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**

1

- (Location 5) Within **0.35 Miles** of **43.01677, -87.98496** between **December 23, 2025 at 11:15 AM** and **December 23, 2025 at 11:21 AM**
- (Location 6) Within **0.35 Miles** of **43.017, -87.94087** between **December 23, 2025 at 12:29 PM** and **December 23, 2025 at 12:36 PM**
- (Location 7) Within **0.35 Miles** of **43.02301, -87.93305** between **December 23, 2025 at 2:26 PM** and **December 23, 2025 at 2:35 PM**
- (Location 8) Within **0.35 Miles** of **43.01538, -87.93768** between **December 23, 2025 at 5:00 PM** and **December 23, 2025 at 6:00 PM**

c. For **AT&T,** all timing advance and/or LOCDBOR records within the locations, bounded by radius, dates, and times (in **Central Time**) below:

- (Location 1) Within **0.60 Miles** of 43.**04591, -87.95126** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 2) Within **0.60 Miles** of **43.04651, -87.9489** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 3) Within **0.60 Miles** of **43.04735, -87.94791** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 4) Within **0.60 Miles** of **43.04865, -87.94524** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 5) Within **0.60 Miles** of **43.01677, -87.98496** between **December 23, 2025 at 11:15 AM** and **December 23, 2025 at 11:21 AM**
- (Location 6) Within **0.60 Miles** of **43.017, -87.94087** between **December 23, 2025 at 12:29 PM** and **December 23, 2025 at 12:36 PM**
- (Location 7) Within **0.60 Miles** of **43.02301, -87.93305** between **December 23, 2025 at 2:26 PM** and **December 23, 2025 at 2:35 PM**
- (Location 8) Within **0.60 Miles** of **43.01538, -87.93768** between **December 23, 2025 at 5:00 PM** and **December 23, 2025 at 6:00 PM**

The following cellular service provider(s) are required to disclose information to the

United States pursuant to this warrant:

1. AT&T, a cellular service provider headquartered in North Palm Beach, FL
2. T-Mobile, a cellular service provider headquartered in Parsippany, NJ
3. US Cellular, a cellular service provider headquartered in Itasca, IL
4. Verizon, a cellular service provider headquartered in Bedminster, NJ

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

For each location described in Attachment A, the cellular service providers identified in Attachment A ("Service Providers") are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made using cell tower(s) during the corresponding timeframe(s) and network interactions made by devices within the location(s) and timeframe(s) listed in Attachment A, including records that identify:

   a. the telephone call number(s) and unique identifiers for each wireless device (the locally served wireless device), including Mobile Subscriber Integrated Services Digital Network Numbers (MSISDN), International Mobile Subscriber Identifiers (IMSI), and International Mobile Equipment Identities (IMEI);

   b. for each communication or interaction, the "sector(s)" (i.e., the face(s) of the tower(s)) that received a signal from the locally served wireless device;

   c. the date, time, and duration of each communication or interaction;

   d. the source and destination telephone numbers associated with each communication or interaction (including the number of the locally served wireless device and the number of the telephone that transmitted a communication to, or to which a communication was transmitted by, the locally served wireless device);

   e. the type of the communication or interaction transmitted (such as phone call, data, or text message);

f.  all specialized location information, including Timing Advance, RTT, LOCDBOR, or similar information that contains a distance from a tower and sector and/or estimated latitude and longitude of the cellular device.

These records should include records about communications or interactions that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication or interaction occurred during the relevant timeframe(s) listed in Attachment A.

## II.  Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 922(q)(2)(A) (Possession of a Firearm in a School Zone); 18 U.S.C. § 922(q)(3)(A) (Discharge of a Firearm in a School Zone); 18 U.S.C. § 111(a)(1)(A) (Assaulting, Resisting, or Impeding Certain Officers or Employees); 18 U.S.C. § 115(a)(1) (Influencing Federal Official by Threat, Assault, or Murder); and 18 U.S.C. § 372 (Conspiracy To Impede Officer),  have been committed, are being committed, or will be committed involving unknown persons.

Upon receiving the requested information from Service Providers, law enforcement will analyze the information to identify devices associated with cellular network records that place those devices in at least two of the relevant search areas around the relevant times.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Providers in order to locate the things particularly described in this warrant.

Law enforcement may seek further identifying information via legal process concerning devices/identifiers collected pursuant to this warrant that place the devices/identifiers in at least

two of the relevant search areas around the relevant times.  Law enforcement will not seek further identifying information with regard to devices/identifiers collected solely pursuant to this warrant from the Service Providers, including issuing subpoenas concerning those devices, that do not meet such criteria, absent further order of the Court. This does not limit law enforcement's ability to seek additional information, absent further order of the Court, regarding any devices/identifiers collected pursuant to this warrant that do not meet the above criteria if such devices/identifiers have also been linked to 18 U.S.C. § 922(q)(2)(A) (Possession of a Firearm in a School Zone); 18 U.S.C. § 922(q)(3)(A) (Discharge of a Firearm in a School Zone); 18 U.S.C. § 111(a)(1)(A) (Assaulting, Resisting, or Impeding Certain Officers or Employees); 18 U.S.C. § 115(a)(1) (Influencing Federal Official by Threat, Assault, or Murder); and 18 U.S.C. § 372 (Conspiracy To Impede Officer),  through separate means as part of the investigation.

CLERK'S OFFICE
A TRUE COPY
Dec 24, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin



# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>information about all communications made using cell<br>towers and all network interactions made by the<br>devices at the dates, times, and locations listed below | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.     25-MJ-243 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(q)(2)(A), 922 (q)(3)(A), 111(a)(1)(A), 115(a) (1), and 372 | Possession of a Firearm in a School Zone; Discharge of a Firearm in a School Zone; Assaulting, Resisting, or Impeding Certain Officers or Employees; Influencing Federal Officials By Threat, Assault; Conspiracy To Impede Officer |

The application is based on these facts:

See the attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jacob Dettmering, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date:     12/24/2025

_____
*Judge's signature*

City and state:   Milwaukee, Wisconsin

William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

I, Jacob Dettmering, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1.       I make this affidavit in support of an application for a warrant for location records and other information associated with certain cellular devices as further described in Attachments A and B that is in the possession, custody, and/or control of the following telecommunications providers: T-Mobile, a cellular service provider headquartered in Parsippany, New Jersey; U.S. Cellular, a cellular service provider headquartered in Chicago, Illinois; Verizon, a cellular service provider headquartered in Bedminster, New Jersey; and AT&T, a cellular service provider headquartered in North Palm Beach, Florida (collectively, "the Service Providers").

2.       The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Service Providers to disclose to the government the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3.       This Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

4.       The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

1

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(q)(2)(A) (Possession of a Firearm in a School Zone); 18 U.S.C. § 922(q)(3)(A) (Discharge of a Firearm in a School Zone); 18 U.S.C. § 111(a)(1)(A) (Assaulting, Resisting, or Impeding Certain Officers or Employees); 18 U.S.C. § 115(a)(1) (Influencing Federal Official by Threat, Assault, or Murder); and 18 U.S.C. § 372 (Conspiracy To Impede Officer), have been committed, are being committed, or will be committed by an unknown person or persons. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

6.     I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 7, 2018. I was assigned to the FBI Capital Area Gang Task Force (CAGTF) in Baton Rouge, Louisiana from June 15, 2018, to April 1, 2020. From April 1, 2020, to June 15, 2025, I was assigned to the Milwaukee Area Safe Streets Task Force as the Task Force Coordinator, tasked with investigating violent criminal gangs.  From June 15, 2025, to October 1, 2025, I was assigned to the U.S. Marshals Fugitive Task Force, conducting fugitive investigations. Since October 1, 2025, I have been assigned as the Acting Supervisory Special Agent for the Milwaukee Area Violent Crime Task Force (MAVCTF), which is tasked with investigating all violent crimes involving violations of federal law. Since 2018, I have investigated violations of federal law, directed drug and street gang investigations, obtained, and executed search and arrest warrants related to the distribution of illegal narcotics and violent crimes, and debriefed confidential informants and cooperating defendants. I am an investigative or law enforcement

officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal offenses.

7.      I have experience in the investigation, apprehension, and prosecution of individuals involved in criminal offenses, the use of cellular devices to commit those offenses, and information that can be used by law enforcement to assist in identifying the users of cellular devices and their location. I know from training and experience that cell phone users normally have their cell telephones on them or near them as they go about daily activities.[1] This includes persons involved in criminal activities. Further, I know based on training and experience that persons involved in criminal activity may have more than one cell phone and may use cell phones to communicate with associates. Such communications may be before, during, and after criminal activity has been committed in an area. Therefore, in the course of investigating criminal activity occurring at specific location(s), information concerning the identity of cellular devices at or near the location(s) as well as details about the source and nature of communications by those devices during the relevant time frame can provide evidence that assists law enforcement to identify unknown criminal actor(s). In particular, here, I know based on my training and experience that in drive-by shootings, as described below, particularly where one person is a getaway driver and the other is the shooter, that there is a high likelihood that the criminal(s) who committed the criminal activity under investigation carried a cellular device and that the particular crime under investigation frequently involves the use of cellular devices by participants.

---

[1] I also know that courts have recognized the prevalence of cell phones in daily life. *See Carpenter v. United States*, 585 U.S. 296, 300 (2018) (stating that, as of approximately June 2018, "There are 396 million cell phone service accounts in the United States—for a Nation of 326 million people"); *Riley v. California*, 573 U.S. 373, 395 (2014) (noting that "According to one poll, nearly three-quarters of smart phone users report being within five feet of their phones most of the time").

8. Based on my training and experience and information provided to me by other members of law enforcement, I have a basic understanding of how a cellular device interacts with a cellular network, how records provided by the major cellular providers are created, and how to use provider-generated records in investigations to determine a cellular phone's general location. For instance, I know that as a device interacts with a network (such as voice, text, data, or registration events), details of that interaction are usually maintained by the cellular service provider. The records can include the phone numbers with which the cellular device was in contact (whether through and incoming/outgoing voice or text), the tower and sector utilized for the connection, and the duration of the connection. Other information, such as records of data sessions and specialized location data, discussed further herein, may be available depending on the provider and the applicable retention period.

9. In preparing this warrant application, I consulted with a member of the FBI Cellular Analysis Survey Team ("CAST"), who provided helpful guidance on cell location data and technology relevant to this investigation.

**PROBABLE CAUSE**

10. On or about Monday, December 22, 2025, at approximately 1:14 p.m., multiple gunshots were fired in the vicinity of and at 12XX North 28th Street, Milwaukee, Wisconsin 53208—the residence of an official who works for the United States Department of Justice (OV-1) and his/her family. At the time, these gunshots were heard by multiple family members of OV-1. A family member contacted the Milwaukee Police Department to report the gunshots, and a ShotSpotter activation occurred. The ShotSpotter system reported five shots fired around OV-1's residence. A photograph of the Shot Spotter report is shown below.



| REPORT TYPE | SHOTSPOTTER ID | |
|---|---|---|
| INVESTIGATIVE LEAD SUMMARY | 81-1265113 | **Incident Date:** 12/22/2025 13:14:51<br>**City / Zone:** Milwaukee / MilwaukeeWI<br>**Requested On:** 12/23/2025 @ 21:55:18<br>**Requested By:** stac@milwaukee.gov |



### INDIVIDUAL SHOTS

The following shot count, times, and locations were automatically calculated by the ShotSpotter system at the time of detection. They are approximate and should be deemed as such. The number of individual shots below may not match the round count reported on page one if an Incident Reviewer adjusted the round count during incident review prior to publication. Some shots may overlap or hide other shots on the map

| SHOT | DATE | TIME | INTERVAL(SEC) | LOCATION |
|---|---|---|---|---|
| #1 | 12/22/2025 | 13:14:51.198 | 0.000 | 43.047043, -87.949227 |
| #2 | 12/22/2025 | 13:14:51.488 | 0.290 | 43.047043, -87.949227 |
| #3 | 12/22/2025 | 13:14:51.761 | 0.273 | 43.047043, -87.949227 |
| #4 | 12/22/2025 | 13:14:52.023 | 0.262 | 43.047043, -87.949227 |
| #5 | 12/22/2025 | 13:14:52.270 | 0.247 | 43.047043, -87.949227 |

11. Afterwards, case agents obtained video from a nearby surveillance camera, which depicts a matte gray four-door Honda Civic proceeding down the alley behind OV-1's residence and a passenger reaching out of the front passenger side window as the Honda Civic approaches the rear of the garage behind OV-1's residence and discharges multiple gunshots, evidenced by multiple muzzle flashes, with the firearm pointed at OV-1's residence. The Honda Civic then turns down another alley and drives away. The Honda Civic has black hub caps/rims, no tint, and front and back license plates. Photographs depicting the muzzle flash from the passenger side of the

Honda Civic, the Honda Civic's black hub caps/rips, front and back license plates, lack of tint, and exterior are provided below.











12. On Tuesday, December 23, 2025, case agents recovered five 5.7x28mm casings from the rear of OV-1's residence, in or near the alley through which the Honda Civic passed.

13. On Tuesday, December 23, 2025, case agents also obtained surveillance video from James Groppi High School, which sits between North 26th Street and North 27th Street and West Vliet Street and West Juneau Avenue in Milwaukee. OV-1's residence at 12XX North 28th Street, Milwaukee, Wisconsin is within a distance of 1,000 feet of the grounds of James Groppi High School, an alternative high school run by the Milwaukee Public Schools.

14. The surveillance video shows a matte gray Honda Civic with black hub caps/rims, no tint, and a distinctive license plate holder, drive eastbound on West McKinley Boulevard, and

turn north on North 27th Street at approximately 1:15 p.m. on Monday, December 22, 2025.

Photographs depicting the vehicle are provided below.







15.     Case agents also obtained surveillance video from the residence located 28XX West Juneau Avenue, Milwaukee, Wisconsin 53208, which captured the same matte gray Honda Civic on December 22, 2025, at 1:15 p.m. travelling eastbound on West Juneau Avenue. The vehicle then turns northbound on North 29th Street and then turns east into the alley which leads behind

OV-1's residence. Although the footage is dark, the vehicle is clearly a new model Honda Civic, with black rims, no tint, and a license plate with a license plate frame. A photograph of the vehicle is depicted below.



16. An exhaustive search was conducted of gray colored Honda sedans throughout Milwaukee. Specific details researched were the matte gray paint color, dark spoked rims, front and back license plates with license plate frames with white writing. Of all the Honda sedans researched throughout Milwaukee, one stuck out as meeting all the characteristics being researched by investigators. That vehicle was a silver Honda Civic displaying Wisconsin license plate AXW-7163, as shown below, which is listed as a silver/aluminum 2025 Honda Civic gray (VIN: 2HGFE2F57SH517127) registered to Krisha Marie Ramos Camacho (DOB: 07/29/1998) at 1511 South Comstock Avenue, Milwaukee, Wisconsin, according to Wisconsin Department of Transportation records. Of note, this vehicle's license plate frames were black with white writing, stating "RUSS DARROW," which appeared to be consistent with the vehicle captured on

surveillance footage. Photographs are depicted below which show the specific characteristics of the vehicle.









17.     Based on the information to date, case agents believe that the matte gray Honda Civic's path of travel went eastbound on West Juneau Avenue, north on North 29th Street, eastbound into the alley, northbound through the alley behind 12XX North 28th Street, Milwaukee, Wisconsin, eastbound through the alley, northbound on North 28th Street, eastbound on West McKinley Boulevard, northbound on North 27th Street, and eastbound on West Vliet Street. Using the data points and the path of travel described above, case agents mapped and pinpointed the GPS coordinates with dates and time frames at four different points where the matte gray Honda Civic was captured listed in Attachment A as Locations 1-4. The locations listed below were identified by video surveillance from the incident. The point at North 28th Street and West Juneau Avenue was developed through surveillance camera footage obtained from 28XX West Juneau Ave, referenced in Paragraph 15.  The point on North 28th Street between West Juneau Avenue and West McKinley Boulevard is the location of OV-1's residence. The point on North 27th Street and West McKinley Boulevard was identified through surveillance footage obtained from James Groppi High School, which was referenced in paragraph 13.  Lastly, the point located at North 25th Street and West Vliet Street is based upon video surveillance which shows the suspect vehicle turn eastbound on West Vliet Street from North 27th Street and travel east. A map with these locations is provided below.



18. The Honda Civic was pinpointed to three other locations using license plate readers at 58th Street and Greenfield, 22nd and Greenfield Avenue, and 16th Street and National, which are listed in Attachment A as Locations 5-7.

19. On Tuesday, December 23, 2025, case agents conducted surveillance at 1511 South Comstock Avenue, Milwaukee, Wisconsin, the registered address for the Honda Civic, and observed the matte gray Honda Civic parked directly in front of the location. Investigators confirmed the vehicle was still matte gray with non-tinted windows and dark rims which matched surveillance footage. Location 8 listed in Attachment A contains the GPS coordinates, date, and time frames related to case agents observations of the 2025 Honda Civic at 1511 South Comstock Avenue, Milwaukee, Wisconsin.

20. I know that OV-1 is a prosecutor with the United States Department of Justice. As such, OV-1 regularly participates in initial appearances, detention hearings, criminal trials, and

litigates and prosecutes cases for the Government. I also know that OV-1 is participating in a criminal case captioned under Case No. 23-CR-184, which is scheduled for a trial, and the case has involved several instances of witness intimidation and witness tampering. I spoke with Detective Nicholas Stachula of the West Allis Police Department, who was a federally-deputized Task Force Officer with the Drug Enforcement Administration (DEA), who was the lead agency for this investigation in Case No. 23-CR-184. Detective Stachula stated that during the course of this specific case, there were numerous cooperators in which tampering and intimidation tactics were attempted. The referenced case involves members of the Sinaloa Cartel who have a documented history of attempting to sway prosecutions by way of intimidation and tampering. I also spoke with Task Force Officer Aaron Hoppe, who was a case agent in the investigation captioned under Case No. 23-CR-184, revealed that one of their targets was Arturo Camacho Rodriquez. At this time, however, case agents have been unable to make a definitive connection between Krisha Ramos Camacho and Arturo Camacho Rodriguez, but will continue to attempt to do so.

21. Based on training and experience, I believe that the shooting which occurred at OV-1's residence appeared to be targeted, in that the Honda Civic drives slowly past the rear of OV-1's residence, the passenger points the firearm out of the vehicle towards OV-1's residence, and the passenger discharges multiple rounds. The targeted shooting, combined with the fact that OV-1 plays a major role in an upcoming jury trial for an associate of the Sinaloa Cartel, leads investigators to believe that the shooting was designed to impede, intimidate, interfere, and threaten OV-1 on account of the performance of his/her official duties.

## TECHNICAL INFORMATION

22.     In my training and experience, I have learned that the Service Providers are companies that provide cellular communications service to the general public.  In order to provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to devices that are within range of the tower's signals.  Each cell tower typically receives signals from wireless devices, such as cellular phones, in its general vicinity.

23.     By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data.  When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it. Relatedly, multiple cell towers at different distances can provide coverage to the same geographic area.  Additionally, cellular service providers such as the Service Providers may capture historical transactional and location data that is generated and derived from a cellular device's interaction with the cellular network. This information may include the cell tower and sector utilized for the interaction, as well as the cellular device's distance from a particular cell tower and/or network derived location estimates.  Network derived location estimates are general estimates of a device's latitude and longitude around certain times based on information possessed by a provider and generally not exact global positioning system ("GPS") coordinates.

24.     Based on my training and experience, I also know that each cellular device is identified by one or more unique identifiers.  For example, with respect to a cellular phone, the device is assigned a unique telephone number, referred to as a Mobile Station International Subscriber Directory Number (MSISDN), as well as an International Mobile Subscriber Identity (IMSI), and contains an International Mobile Equipment Identity (IMEI).

25. In addition, many modern automobiles incorporate built-in cellular devices that support or enable entertainment, safety, or convenience features, and these devices may passively connect to and communicate with cellular networks. Here, surveillance cameras show that the driver and the shooter were in a newer model gray Honda Civic, consistent with the 2025 Honda Civic captured on nearby cameras. According to Honda's website, the 2025 Honda Civic has a telematics system controlled by a Telematics Control Unit (TCU), which enables remote vehicle access, diagnostics, and connection features, including the Honda Link app.[2] Honda Link also allows a driver or passenger to connect a smartphone to the vehicle via Bluetooth.

26. Based on my training and experience, I know that cellular providers, such as the Service Providers, routinely and in their regular course of business, maintain historical records that can show which devices interacted with the cellular network, as well as details about such interactions including where and when such interactions occur. For each interaction with the wireless provider's network, these records may include:

    a. the cellular telephone call number and/or unique identifiers of the wireless device that connected to the provider's cellular network (the locally served wireless device);

    b. the telephone number(s) in contact with the locally served wireless device;

---

[2] https://automobiles.honda.com/2025/civic-sedan#:~:text=without%20the%20cable.-,Sport%20Touring%20Hybrid%20shown%20with%20Black%20Leather.,standard%20on%20Sport%20Touring%20Hybrid.&text=Use%20your%20compatible%20Android%E2%84%A2,standard%20on%20Sport%20Touring%20Hybrid.&text=The%20HondaLink%C2%AE%20app*%20makes,standard%20on%20Sport%20Touring%20Hybrid.&text=Sport%20Touring%20Hybrid%20shown.&text=With%20a%20front%20USB*%20port,standard%20on%20Sport%20and%20above.&text=The%20blind%20spot%20information%20system,when%20you're%20backing%20up; https://www.hondainfocenter.com/2025/Civic-Si/Feature-Guide/Interior-Features/9-inch-color-touch-screen-with-HondaLink-plus-Apple-CarPlay-and-Android-Auto/; https://mygarage.honda.com/s/hondalink-marketing.

c. the cellular tower(s) on the provider's network, as well as the "sector" (*i.e.*, face of the tower), to which the locally served wireless device connected;

d. the distance from the tower and sector that the cellular device was located;

e. the estimated latitude and longitude of the cellular device; and/or

f. the date, time, type, and duration of the interaction.

27. Based on my training and experience, I am aware that various cellular service providers have different capabilities, different data retention periods, and different abilities to produce records in response to requests from law enforcement. A purpose of this warrant is to obtain historical evidence held by the Service Providers relevant to the offenses described herein and the offender(s) behind those offenses. The requested warrant seeks information from the Service Providers relating to devices that were present in specific areas around specific times. This includes information relating to cell towers and specialized location information.

28. For instance, I know that, in response to proper legal process, cellular service providers can search records regarding specific cell towers in a specific area (such a street address or longitude and latitude). This includes information about devices that connected to a specific cell tower during a certain timeframe. This type of request is often called a "tower search" or "tower dump." The connection records are generally linked to voice-call events, though they may also be linked to text and data records depending on the provider. Based on my training and experience and guidance from experts in the field, I understand that multiple towers will often provide coverage to a single area. I further understand, however, that providers such as T-Mobile and AT&T often do not provide data from all towers that may provide coverage to an area due to the internal procedures they use to process tower dump requests that list specific area(s). More specifically, T-Mobile often provides information from only the single closest tower to an

identified area, even if multiple towers likely provided coverage to that area. This practice can unfortunately omit information about devices that were in the identified area. Therefore, search radii distances are included for T-Mobile and AT&T in Attachment A, subpart (a), based on my understanding of the applicable cellular networks and guidance from those who have extensive training and experience in this area. Additionally, the time period listed in Attachment A, subpart (a), is intended to account for the fact that this type of location information is often generated based on a voice-call event (with the exception of AT&T, which provides location information based on data and SMS records as well) and that if the time period is too short, it might exclude devices in the identified area around the identified times.

29. Further, I understand that in response to proper legal process, cellular service providers generally can search records that include an estimated location of a device that interacted with its network during a certain timeframe. This is often referred to as an "area search" request. The estimated device location, which is typically provided as a latitude and longitude, can vary based on the network environment, sources of the location estimate, and/or any number of data points used by the cellular provider to calculate the device location estimate. The device's estimated location reported by a provider is not, and should not be treated as, a specific GPS location—it is a location estimate created by a provider through their proprietary algorithm. This estimated location is what is queried by the provider in response to the listed search radii distances and times. In my training and experience, I understand that in most instances, an estimated device location from a provider reliably indicates the general geographic location of a device, often falling somewhere along the arc of the estimated distance of the device from a tower within a sector. This distance-to-tower information can be plotted by experts and is used as a primary, though not necessarily the only, data point by law enforcement to identify those devices consistent with the

geographic areas in question, rather than the estimated latitude and longitude of a device generated by a provider. The search radii distances listed in Attachment A, subparts (b) and (c), are based on my understanding of the applicable cellular networks and guidance from those who have extensive training and experience in this area. Further, I understand that AT&T's cell sites are generally less densely located than some other providers, such as T-Mobile and U.S. Cellular, and that AT&T uses multiple inputs to generate estimated device location information. The accuracy of this estimated device location data can vary widely; therefore, Attachment A, subpart (c), includes a larger search radius for AT&T.

30.     The aforementioned information is often contained within the call detail records (which include voice, text, or data transactions) and specialized location information that is captured and controlled by cellular service providers, which may be referred to as Timing Advance data, Real Time Tool (RTT), Location Database of Record ("LOCDBOR") data, or something similar. The requested warrant seeks the information identified in Attachments A and B, regardless of how the provider stores or labels such information.

31.     Based on my training and experience and the above facts, I understand that information obtained from cellular service providers such as the Service Providers that reveals what devices interacted with a specific cell tower and sector, in addition to the reported distance from tower when available, can be used to show that such devices were in or around an area around a specific time and consistent with the facts of the investigation, and who/whom they may be in contact with via voice or text before, during, and/or after the incident, providing evidence relevant to the aforementioned violations. Thus, the records described in Attachment A will identify the cellular devices that were in the vicinity of relevant locations around the time that the possession and discharge of a firearm occurred, and during the path of travel of the vehicle used during the

possession and discharge of a firearm. This information, in turn, will assist law enforcement in determining which person(s) were present during the discharge of the firearm at or towards OV-1's residence.

32.     In this case, time periods and geographic areas listed in Attachment A have been set with the intent to limit the number of devices captured by the warrant while still capturing the suspects' device(s). This has been based on guidance from experts who have received training from cellular providers and academia on radio frequency theory, and who have analyzed these types of records on a continuous basis with an understanding of how they are generated. The radii of 0.35 miles for T-Mobile/US Cellular and 0.60 miles for AT&T is appropriate for much of the City of Milwaukee and surrounding areas when there is an identified criminal incident at near one or more locations around one or more certain times because, among other things, the area is a dense metropolitan area with fairly consistent elevation, and experts in this field know that the area has cellular towers in fairly close proximity compared to other, less populated areas. Here, as discussed above, the discharge of a firearm occurred at 12XX North 28th Street, Milwaukee, Wisconsin 53208, which is in the City of Milwaukee.

33.     Your affiant notes that the search parameters in a metropolitan area will likely cover residences, businesses, intersections and public areas. Here, the parameters will cover several residences, intersections, and businesses, because this is part of a dense urban, residential neighborhood in the City of Milwaukee, close to neighborhoods, businesses, and schools. However, experts in this field who understand how the cellular networks operate and how location records are typically generated, retained, and produced in response to legal process, know that it is not generally possible to exclude such places within the relevant area(s) and still generate search parameters that will compel the cellular providers to provide information useful to investigators

for the purposes discussed in this affidavit. Relatedly, those trained in conducting the location analysis, such as FBI CAST, look for devices within the search parameters that are consistent with the facts of the investigation because it is generally not possible to conclude with absolute certainty, based on provider records and the limits of cell site technology, that a specific device was at a specific GPS point, such as inside a store, an office, or any other specific location within the search parameters, at the exact moment a crime occurred. The requested search area therefore is limited in both distance and time to allow a comparison of the multiple locations in order to identify those devices consistent with the facts of the investigation and geographic area involved, including travel in, out, or around the locations around the time of the incident, while limiting the initial number or devices within the search area. As noted herein, the requested warrant does not seek detailed subscriber information such as the names, addresses, or other personal identifiers of any of cellular device users or their exact location within that search area.

## AUTHORIZATION REQUEST

34.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c).

35.    I further request that the Court direct the Service Providers to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on the Service Providers, who will then compile the requested records at a time convenient to them, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

36.    Upon receiving the requested information from Service Providers, law enforcement will analyze the information to identify devices associated with cellular network records that place those devices in at least two of the relevant search areas around the relevant times.

37. Law enforcement may seek additional information via legal process concerning the devices/identifiers collected through the requested warrant that place the devices/identifiers in at least two of the relevant search areas around the relevant times. Law enforcement will not seek further identifying information regarding devices/identifiers collected solely pursuant to the requested warrant from the Service Providers, including issuing subpoenas concerning those devices, that do not meet such criteria, absent further order of the Court. This is not, however, intended to limit law enforcement's ability to seek additional information, absent further court order, about devices/identifiers collected pursuant to the requested warrant that are also linked to the criminal activity discussed herein through separate means as part of the investigation (e.g., witness statements, interviews, tips, physical evidence, records, etc.)

38. No detailed subscriber information (such as the subscriber's name, physical address, or other personal identifying information), contents of communications, or location information outside the listed search criteria discussed herein and Attachment A is sought through the requested warrant.

# ATTACHMENT A

## Property to Be Searched

Records and information associated with the below listed search parameters for the identified date(s) and timeframe(s) that are within the possession, custody, or control of the cellular service provider(s) identified below:

a. For **Verizon,** records and information associated with communications to and from the towers that provided cellular service to the areas referenced below, and for **T-Mobile and AT&T**, records and information associated with communications to and from the towers located within [1.5] miles of the areas referenced below, during the specified date/time range referenced in **Central Time**.

- (Location 1) **43.04591, -87.95126** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 2) **43.04651, -87.9489** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 3) **43.04735, -87.94791** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 4) **43.04865, -87.94524** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 5) **43.01677, -87.98496** between **December 23, 2025 at 11:15 AM** and **December 23, 2025 at 11:21 AM**
- (Location 6) **43.017, -87.94087** between **December 23, 2025 at 12:29 PM** and **December 23, 2025 at 12:36 PM**
- (Location 7) **43.02301, -87.93305** between **December 23, 2025 at 2:26 PM** and **December 23, 2025 at 2:35 PM**
- (Location 8) **43.01538, -87.93768** between **December 23, 2025 at 5:00 PM** and **December 23, 2025 at 6:00 PM**

b. For **T-Mobile** and **US Cellular,** all timing advance records within the locations, bounded by radius, dates, and times (in Central Time) below:

- (Location 1) Within **0.35 Miles** of 43**.04591, -87.95126** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 2) Within **0.35 Miles** of **43.04651, -87.9489** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 3) Within **0.35 Miles** of **43.04735, -87.94791** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 4) Within **0.35 Miles** of **43.04865, -87.94524** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**

1

- (Location 5) Within **0.35 Miles** of **43.01677, -87.98496** between **December 23, 2025 at 11:15 AM** and **December 23, 2025 at 11:21 AM**
- (Location 6) Within **0.35 Miles** of **43.017, -87.94087** between **December 23, 2025 at 12:29 PM** and **December 23, 2025 at 12:36 PM**
- (Location 7) Within **0.35 Miles** of **43.02301, -87.93305** between **December 23, 2025 at 2:26 PM** and **December 23, 2025 at 2:35 PM**
- (Location 8) Within **0.35 Miles** of **43.01538, -87.93768** between **December 23, 2025 at 5:00 PM** and **December 23, 2025 at 6:00 PM**

c. For **AT&T,** all <u>timing advance and/or LOCDBOR records within the locations, bounded by radius, dates, and times (in **Central Time**) below:</u>

- (Location 1) Within **0.60 Miles** of 43.**04591, -87.95126** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 2) Within **0.60 Miles** of **43.04651, -87.9489** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 3) Within **0.60 Miles** of **43.04735, -87.94791** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 4) Within **0.60 Miles** of **43.04865, -87.94524** between **December 22, 2025 at 1:09 PM** and **December 22, 2025 at 1:21 PM**
- (Location 5) Within **0.60 Miles** of **43.01677, -87.98496** between **December 23, 2025 at 11:15 AM** and **December 23, 2025 at 11:21 AM**
- (Location 6) Within **0.60 Miles** of **43.017, -87.94087** between **December 23, 2025 at 12:29 PM** and **December 23, 2025 at 12:36 PM**
- (Location 7) Within **0.60 Miles** of **43.02301, -87.93305** between **December 23, 2025 at 2:26 PM** and **December 23, 2025 at 2:35 PM**
- (Location 8) Within **0.60 Miles** of **43.01538, -87.93768** between **December 23, 2025 at 5:00 PM** and **December 23, 2025 at 6:00 PM**

The following cellular service provider(s) are required to disclose information to the

United States pursuant to this warrant:

1. AT&T, a cellular service provider headquartered in North Palm Beach, FL
2. T-Mobile, a cellular service provider headquartered in Parsippany, NJ
3. US Cellular, a cellular service provider headquartered in Itasca, IL
4. Verizon, a cellular service provider headquartered in Bedminster, NJ

# ATTACHMENT B

## Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

For each location described in Attachment A, the cellular service providers identified in Attachment A ("Service Providers") are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made using cell tower(s) during the corresponding timeframe(s) and network interactions made by devices within the location(s) and timeframe(s) listed in Attachment A, including records that identify:

      a.  the telephone call number(s) and unique identifiers for each wireless device (the locally served wireless device), including Mobile Subscriber Integrated Services Digital Network Numbers (MSISDN), International Mobile Subscriber Identifiers (IMSI), and International Mobile Equipment Identities (IMEI);

      b.  for each communication or interaction, the "sector(s)" (i.e., the face(s) of the tower(s)) that received a signal from the locally served wireless device;

      c.  the date, time, and duration of each communication or interaction;

      d.  the source and destination telephone numbers associated with each communication or interaction (including the number of the locally served wireless device and the number of the telephone that transmitted a communication to, or to which a communication was transmitted by, the locally served wireless device);

      e.  the type of the communication or interaction transmitted (such as phone call, data, or text message);

f.  all specialized location information, including Timing Advance, RTT, LOCDBOR, or similar information that contains a distance from a tower and sector and/or estimated latitude and longitude of the cellular device.

These records should include records about communications or interactions that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication or interaction occurred during the relevant timeframe(s) listed in Attachment A.

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 922(q)(2)(A) (Possession of a Firearm in a School Zone); 18 U.S.C. § 922(q)(3)(A) (Discharge of a Firearm in a School Zone); 18 U.S.C. § 111(a)(1)(A) (Assaulting, Resisting, or Impeding Certain Officers or Employees); 18 U.S.C. § 115(a)(1) (Influencing Federal Official by Threat, Assault, or Murder); and 18 U.S.C. § 372 (Conspiracy To Impede Officer),  have been committed, are being committed, or will be committed involving unknown persons.

Upon receiving the requested information from Service Providers, law enforcement will analyze the information to identify devices associated with cellular network records that place those devices in at least two of the relevant search areas around the relevant times.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Providers in order to locate the things particularly described in this warrant.

Law enforcement may seek further identifying information via legal process concerning devices/identifiers collected pursuant to this warrant that place the devices/identifiers in at least

two of the relevant search areas around the relevant times.  Law enforcement will not seek further identifying information with regard to devices/identifiers collected solely pursuant to this warrant from the Service Providers, including issuing subpoenas concerning those devices, that do not meet such criteria, absent further order of the Court. This does not limit law enforcement's ability to seek additional information, absent further order of the Court, regarding any devices/identifiers collected pursuant to this warrant that do not meet the above criteria if such devices/identifiers have also been linked to 18 U.S.C. § 922(q)(2)(A) (Possession of a Firearm in a School Zone); 18 U.S.C. § 922(q)(3)(A) (Discharge of a Firearm in a School Zone); 18 U.S.C. § 111(a)(1)(A) (Assaulting, Resisting, or Impeding Certain Officers or Employees); 18 U.S.C. § 115(a)(1) (Influencing Federal Official by Threat, Assault, or Murder); and 18 U.S.C. § 372 (Conspiracy To Impede Officer),  through separate means as part of the investigation.